IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRINITY UNIVERSAL INSURANCE | § | |
| COMPANY, UTICA NATIONAL | § | |
| INSURANCE, and NATIONAL | § | |
| AMERICAN INSURANCE COMPANY, | § | |
| AS SUBROGEES OF LACY MASONRY, | § | |
| INC., | § | |
| | § | CIVIL ACTION NO. H-07-0878 |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| EMPLOYERS MUTUAL CASUALTY | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending are Plaintiffs Trinity Universal Insurance Company's, Utica National Insurance's, and National American Insurance Company's Motion for Summary Judgment (Document No. 23) and amendment thereto (Document No. 27),[1] and Defendant Employers Mutual Casualty Company's [Cross] Motion for Summary Judgment (Document No. 26).  After carefully considering the motions, responses, replies, and the applicable law, the Court concludes as follows.

---

[1] Plaintiffs represent that their Amended Motion for Summary Judgment includes a table of contents, index of authorities, appendix, and at least one citation not previously available, although its substance "is the same as [the motion for summary judgment] originally filed . . . ."  Document No. 27 at 1 n.1.

I.  <u>Background</u>

This is an insurance coverage dispute in which jurisdiction is based on diversity of citizenship.  Lacy Masonry, Inc. ("Lacy Masonry") is the named insured under four commercial general liability insurance ("CGL") policies issued by Plaintiffs Trinity Universal Insurance Company, Utica National Insurance, and National American Insurance Company (collectively, "Plaintiffs"), and Defendant Employers Mutual Casualty Company ("EMC").  Plaintiffs' policies had a combined coverage period from March 25, 2000 to May 14, 2004, and EMC's, from May 16, 2004 to May 16, 2005.  *See* Document No. 27 exs. A at UTICA 0004, B-1 at NAIC 0001, B-2 at NAIC 0072, C at TRINITY 0005, D at EMC 0001; <u>id.</u> ex. H.  The foregoing policies contain identical "other insurance" clauses, stating:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> . . .
>
>> c.  Method of Sharing
>>
>> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
>>
>> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of

2

insurance to the total applicable limits of
insurance of all insurers.

Document No. 27 exs. A at UTICA 0094; B-1 at NAIC 0033; B-2 at NAIC
120; C at TRINITY 0026; D at EMC 0018;  H (stipulation).

On November 1, 2005, Lacy Masonry was served with a suit in
Texas state court brought by McKenna Memorial Hospital ("McKenna"),
against Lacy Masonry and several other entities allegedly
responsible for various aspects of the design, construction, and
improvement of a building that has sustained property damage due to
extensive water infiltration problems.[2]  Document No. 27 exs. E,
E-A.  The current, Fourth Amended Petition ("Petition") does not
allege when any of the defendants' conduct occurred or when McKenna
detected damage to its building, but McKenna invokes the discovery
rule as one of several grounds for tolling the applicable statutes
of limitations.  *See* Document No. 27 ex. E-B; id. ¶ 39.

In the Petition, McKenna asserts that Lacy Masonry is
"responsible for the defects and deficiencies . . . which relate
to" its "installation of all masonry work, facade items and
integrity of portions of the building envelope."  Id. ex. E-B at 5
¶ 8.  The numerous defects cited in the Petition include "water
infiltration caused by improperly installed masonry . . . ."  Id.
at 10 ¶ 16, 13 ¶ 24.

---

[2] That suit is styled McKenna Memorial Hospital v. HBE Corp.,
No. C2005-0993C (274th Dist. Ct., Comal County, Tex. Sept. 29,
2005).

The Petition also names co-defendant Ollie Tope & Sons as the entity responsible for "install[ing] the Project's EIFS system" that allegedly "failed to perform its function," thus allowing water to intrude and "damag[e] the construction and architectural finishes." Id. at 5 ¶ 9. "EIFS" is short for "exterior insulation and finish system," a multi-layered synthetic exterior cladding that possesses insulating properties and serves as an inexpensive alternative to traditional, natural stucco finishes. See PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., 2 BRUNER & O'CONNOR CONSTRUCTION LAW § 7:124.50 (2007). The system generally consists of (1) an attachment system utilizing either an adhesive or mechanical anchor; (2) an insulation layer, typically of pre-formed foam plastic boards; (3) a base coat consisting of water-resistant polymer and cement; (4) a reinforcing mesh placed into the base coat; and (5) a finish coat textured to resemble stucco and that can be colored in various shades. Id. In recent years, EIFS products and installation have spawned numerous lawsuits, primarily related to moisture intrusion. Id.; see also Rebecca Porter, Something Rotten in Synthetic Stucco, Suits Claim, 38 TRIAL 12, 12-13 (2002).

On or before February 2, 2006, Lacy Masonry notified EMC and Plaintiffs regarding the underlying suit. Document No. 27 at 6; id. ex. E. Plaintiffs, after reviewing their respective policies and the Petition, agreed to defend Lacy Masonry in the underlying

4

suit, subject to reservations of their rights.    EMC, however, asserted that it had no duty to defend under its policy with Lacy Masonry (the "EMC Policy") and has not contributed any portion of the costs of defense which have been borne entirely by Plaintiffs.

Plaintiffs assert claims for breach of contract, contribution, and attorney's fees, and seek a declaration that EMC has a duty to defend Lacy Masonry in the underlying suit.   Document No. 1 ex. A. The parties now cross-move for summary judgment, disputing (1) whether the allegations against Lacy Masonry in the underlying Petition are potentially covered by the EMC Policy so as to trigger EMC's duty to defend; and (2) whether Texas law allows a co-insurer to recover a share of the costs of defense from another insurer when their policies contain identical "pro rata" or "other insurance" clauses.   *See* Document No. 26 at 5-21; Document No. 27 at 9-16; Document No. 31 at 2-4; Document No. 32 at 2-16.

## II.   Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interroga- tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   FED. R. CIV. P. 56(c).   The moving party must "demonstrate

5

the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A., 315 F.3d 533, 537 (5th Cir. 2003). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the

factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id.

### III. Discussion

Plaintiffs seek a declaration that EMC has a duty to defend Lacy Masonry in the underlying suit and assert through subrogation or contribution a right to recover from EMC a proportionate share of the defense costs they have already incurred. Document No. 23 at 2; Document No. 27 at 2. EMC contends that: (1) coverage is precluded and hence, it has no duty to defend; and (2) even if it has a duty to defend, a recent decision of the Texas Supreme Court forecloses Plaintiffs' claims for contribution or subrogation. Each issue is discussed in turn.

A.  Duty to Defend

1.  "Designated Work" exclusion

EMC asserts that it has no duty to defend because an endorsement to the EMC Policy expressly excludes coverage for Lacy Masonry's alleged conduct. Document No. 26 at 8-16. "Under Texas law, whether an insurer has a duty to defend is governed by the 'eight corners rule' whereby the allegations in the petition filed against the insured are compared against the insurance policy." EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co., 438 F.3d 519, 524 (5th Cir. 2006). Stated differently, the duty to defend

7

is triggered only if the factual allegations in the underlying complaint potentially fall within the scope of coverage. *See* <u>Lamar Homes, Inc. v. Mid-Continent Cas. Co.</u>, 242 S.W.3d 1, 13 (Tex. 2007) ("The duty to defend must be determined . . . by comparing the complaint's factual allegations to the policy's actual language."); <u>Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.</u>, 939 S.W.2d 139, 141 (Tex. 1997) (explaining the focus is upon the factual allegations in the petition, not the legal theories asserted). "Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage." <u>GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church</u>, 197 S.W.3d 305, 308 (Tex. 2006). All doubts concerning the duty to defend must be resolved in favor of the insured. <u>Nat'l Union Fire Ins. Co.</u>, 939 S.W.2d at 141 (quoting <u>Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.</u>, 387 S.W.2d 22, 26 (Tex. 1965)).

When, as here, the duty to defend depends on the scope of an exclusionary clause, the party invoking the clause bears the burden of showing that the exclusion applies. <u>Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.</u>, 141 S.W.3d 198, 202 (Tex. 2004); *see also* <u>Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.</u>, 197 F.3d 720, 723 (5th Cir. 1999). "The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by

the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991) (citing, inter alia, Glover v. Nat'l Ins. Underwriters, 545 S.W.2d 755, 761 (Tex. 1977)).

The EMC Policy is a standard CGL policy that provides coverage for "property damage" caused by an "occurrence." Document No. 27 ex. D § I--1.a & b. The Texas Supreme Court, responding to certified questions from the Fifth Circuit, recently construed this language to encompass damage to a structure resulting from the insured's allegedly defective construction or faulty workmanship, provided that the damage was an unexpected consequence of the insured's negligence. See Lamar Homes, Inc., 242 S.W.3d at 4, 16. However, the EMC Policy contains an endorsement excluding coverage for certain "Designated Work." It reads, "This insurance does not apply to 'property damage' included in the 'products/completed operations hazard' and arising out of 'your work' shown in the Schedule." Document No. 27 ex. D at EMC 0037. The basic policy defines "property damage" as "[p]hysical injury to" or "[l]oss of use of" tangible property. Id. at EMC 0021 § V--17. A "[p]roducts-completed operations hazard" includes "'property damage' occurring away from premises you own or rent and arising out of . . . 'your work,'" subject to certain, inapplicable exceptions. Id. at EMC 0021 § V--16.

9

Although the basic policy defines "your work" as "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations," id. at EMC 0022 § V--22.a, the exclusion endorsement adds a Schedule above referenced which specifies "your work" that is Designated Work excluded from coverage, as follows:

> 1. The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof . . . .
>
> 2. *Any work* or operations with respect to *any exterior component, fixture or feature* of any structure i[f] an *"exterior insulation and finish system" is used on any part of that structure*.

Id. at EMC 0037 (emphasis added) (hereinafter "EIFS Exclusion"). The Schedule also includes a standard definition of "exterior insulation and finish system" as an "exterior cladding or finish system used on any part of any structure and consisting of" an insulation board, adhesive or mechanical fasteners, a reinforced base coat, and a finish coat with texture and color. Id. Briefly summarized, the EIFS Exclusion in the EMC Policy excludes coverage for injuries to or loss of use of tangible property on premises not owned or rented by the insured, Lacy Masonry, if those injuries arise out of either its construction, installation, application, or other service of an EIFS, and also excludes coverage for any work

or operations performed by Lacy Masonry on any exterior components or features of a structure if EIFS is used on that structure or any part of the structure.

The Petition[3] identifies Lacy Masonry as

> the mason for the Project . . . responsible for the proper installation of *all masonry work*, facade items and integrity of portions of the building envelope. Lacy Masonry is responsible for the defects and deficiencies, as more fully set forth herein, which relate to the above described masonry items.

Id. ex. E-B at 5 ¶ 8 (emphasis added).  In its statement of additional background facts, the Petition further alleges:

> McKenna has experienced water infiltration in several portions of the Project constructed by, serviced by and/or materials provided by, Defendants, HBE, Armor Sealants, Inc., Ollie Tope & Sons, and/or Lacy Masonry, Inc.  McKenna has experienced water infiltration and damage . . . due to envelope problems with the structure as the result of improper design, manufacture and/or installation of the construction components and the renovations performed to the existing structures and the systems contained therein.  These include, but are not limited to: (1) water infiltration at the interior and exterior building envelope; (2) water infiltration at the windows; (3) water infiltration at the roof; (4) water infiltration caused by improperly installed masonry; and (5) water infiltration caused by faulty and/or defective plumbing. . . .  The aforementioned leaks and/or water infiltration are believed to have been caused by the

---

[3] Whether Defendant has a duty to defend Lacy Masonry turns on the allegations in the Fourth Amended Petition.  *See, e.g.*, Guaranty Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 194 (5th Cir. 1998) ("An amended pleading completely supersedes prior pleadings, such that the duty to defend rests on the most recent pleading.").

> following, which include but are not limited to:
> (1) faulty and defective plumbing; (2) faulty and
> defective hot water pipes; (3) faulty and defective
> ductwork; (4) faulty and defective chilled water pipe;
> (5) faulty and defective insulation; (6) faulty and
> defective supply and air grilles; (7) roof leaks;
> (8) windows; (9) refrigerant leaks; (10) faulty and
> defective fire sprinkler system; and (11) other areas
> otherwise located throughout the building that are from
> a yet unidentified source.

Id. at 10 ¶ 16; *see also* id. at 13 ¶ 24 (alleging that Lacy Masonry

and various co-defendants breached their duty of reasonable care by

failing to construct and/or design a building without leaks from

the interior and exterior building envelope, from the windows, from

the roof, due to improperly installed masonry, and because of

faulty and/or defective plumbing).

EMC asserts that these paragraphs in the Petition, read

together, make "clear that the only thing Lacy Masonry is being

sued for involves exterior components of a structure that

incorporate EIFS," thereby bringing the allegations squarely within

the scope of the EIFS Exclusion of coverage for work on "any

exterior component, fixture or feature of any structure" that uses

an EIFS on any part of that structure. Document No. 33 at 6;

Document No. 26 ex. 1 EMC 0037. Although the first paragraph

indicates that Lacy Masonry performed work on the "building

envelope," it also ascribes to Lacy Masonry "*all masonry work*" on

the structure. Id. at 5 ¶ 8 (emphasis added). The myriad defects

enumerated in the second paragraph include, in pertinent part,

"water infiltration caused by improperly installed masonry . . . ."
Id. at 10 ¶ 16.  Because Lacy Masonry allegedly performed "all
masonry work," the water infiltration that was purportedly caused
by improper installation of masonry relates to Lacy Masonry's
activities.

Nowhere, however, does the Petition allege that masonry work
was performed exclusively on the *exterior* of the building or that
there was no masonry work done in the *interior* of the building, and
nowhere does the Petition limit or confine the work attributed to
Lacy Masonry to masonry work performed only on the exterior of the
building.  Hence, any masonry work performed by Lacy Masonry on the
*interior* of the building does not fall within the EIFS Exclusion of
work on an *exterior* component or feature of a structure that uses
an EIFS.  The Petition must be given a liberal construction and all
ambiguities are required to be resolved in favor of coverage.  *See*
Allstate Ins. Co. v. Hallman, 159 S.W.3d 640, 643 (Tex. 2005)
("[I]n the event of an ambiguity, we construe the pleadings
liberally, resolving any doubt in favor of coverage.").  EMC has
not met its burden to establish by a comparison of the Petition
itself to EMC's policy language that "none of the claims asserted
potentially fall within coverage." Cornhill Ins. PLC v. Valsamis,
Inc., 106 F.3d 80, 84 (5th Cir. 1997) (citing Heyden Newport Chem.
Corp., 387 S.W.2d at 26.  Accordingly, EMC is not relieved of its
duty to defend on the basis of the EIFS Exclusion.

2.    Fortuity doctrine and "known loss" exclusion

In the alternative, EMC, relying on evidence extrinsic to the Petition, contends that the common law fortuity doctrine and the terms of the EMC Policy preclude coverage because "Lacy Masonry was aware of the McKenna loss" before the EMC Policy took effect on May 16, 2004.   Document No. 26 at 17.   The "fortuity doctrine" generally excludes coverage for known losses or losses the insured knew or should have known were ongoing before the policy was issued.   *See* Lennar Corp. v. Great Am. Ins. Co., 200 S.W.3d 651, 687-88 (Tex. App.--Houston [14th Dist.] 2006, pet. denied) (applying the "known loss" and "loss in progress" components of the fortuity doctrine and holding coverage was barred for EIFS-related claims for homes on which the insured had made repairs prior to the effective date of the policy); *see also* Warrantech Corp. v. Steadfast Ins. Co., 210 S.W.3d 760, 767 (Tex. App.--Ft. Worth 2006, no pet.); Two Pesos, Inc. v. Gulf Ins. Co., 901 S.W.2d 495, 502 (Tex. App.--Houston [14th Dist.] 1995, no writ).   This doctrine derives from the principle that "[i]nsurance is designed to protect against unknown, fortuitous risks," not those that are certain. Burlington Ins. Co. v. Tex. Krishnas, Inc., 143 S.W.3d 226, 230 (Tex. App.--Eastland 2004, no pet.); *see also* Scottsdale Ins. Co. v. Travis, 68 S.W.3d 72, 75 (Tex. App.--Dallas 2001, pet. denied) ("[B]ecause insurance policies are designed to insure against

14

fortuities, fraud occurs when a policy is misused to insure a certainty.").

The EMC Policy also expressly limits coverage to "'property damage' which occurs during the policy period[4] and was not, prior to the policy period, known to have occurred by [the] insured." Document No. 26 ex. 1 at EMC 0007 § I--1.c.  An insured is deemed to have knowledge that "property damage" has occurred at the earliest time when he or any "employee" authorized by him to give or receive notice of an "occurrence" or "claim":

> (1)   Reports all, or any part, of the . . . "property damage" to [EMC] or any other insurer;
>
> (2)   Receives a written or verbal demand or claim for damages because of the . . . "property damage"; or
>
> (3)   *Becomes aware by any other means that . . . "property damage" has occurred or has begun to occur.*

---

[4] The Texas Supreme Court has not articulated a rule for determining when property damage "occurs" for purposes of an occurrence-based CGL policy, and the intermediate appellate courts are divided on this issue.  *See* OneBeacon Ins. Co. v. Don's Bldg. Supply, Inc., 496 F.3d 361, 364 (5th Cir. 2007) (per curiam). Indeed, this issue is currently before the Texas Supreme Court on certified questions from the Fifth Circuit.  Id. at 366.  In the meantime, this Court is bound by Fifth Circuit precedent holding that coverage under an occurrence-based CGL is triggered when the property damage manifests.  *See* Guaranty Nat'l Ins. Co. v. Azrock Indus., Inc., 211 F.3d 239, 248 (5th Cir. 2000) (holding the district court properly applied a manifestation theory to determine whether coverage for property damage was triggered); Am. Home Assur. Co. v. Unitramp Ltd., 146 F.3d 311, 314 (5th Cir. 1998) ("The date of occurrence is when the damage is capable of being easily perceived, recognized and understood.").

Id. at EMC 0007 § I--1.d (emphasis added).  "Property damage" includes both physical injury to and loss of use of tangible property.  Id. at EMC 0021 § V--17.a & b.

Plaintiffs argue that Texas law forbids consideration of the extrinsic evidence submitted by EMC to demonstrate Lacy Masonry's knowledge of property damage to McKenna's building before the effective date of the EMC Policy.  Document No. 32 at 13-15. Indeed, the Texas Supreme Court has not iterated any exception to the eight-corners rule.  See GuideOne Elite Ins. Co., 197 S.W.3d 308 (noting that "this Court has never expressly recognized an exception to the eight-corners rule . . . .").  However, the Fifth Circuit, reviewing decisions from Texas intermediate courts of appeals, held that if such an exception were to exist, extrinsic evidence would be admissible to ascertain whether an insurer has a duty to defend only if: (1) the allegations in the underlying petition are ambiguous as to whether coverage exists; and (2) the proffered evidence is relevant only to the issue of coverage and neither overlaps with the merits of the underlying suit, nor contradicts any allegations in the pleading.  See Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 531 (5th Cir. 2004); GuideOne Elite Ins. Co., 197 S.W.3d at 308-09 (citing with approval the exception articulated in Northfield, but declining to resolve whether consideration of such evidence is appropriate); see also State Farm Fire & Cas. Co. v. Wade, 827 S.W.2d 448, 453 (Tex.

16

App.--Corpus Christi 1992, writ denied) (allowing extrinsic evidence where the allegations in the pleading are ambiguous as to the applicability of a policy exclusion, and "when doing so does not question the truth or falsity of any facts alleged in the underlying petition filed against the insured"); Cook v. Ohio Cas. Ins. Co., 418 S.W.2d 712, 714-15 (Tex. Civ. App.--Texarkana 1967, no writ) (same); Int'l Serv. Ins. Co. v. Boll, 392 S.W.2d 158, 161 (Tex. Civ. App.--Houston 1965, writ ref'd n.r.e.) (same).

Contrary to EMC's assertions, its proffered evidence does not fit within this presumed narrow exception to the eight-corners rule. First, the documentary evidence upon which EMC relies was produced during the course of discovery in the underlying suit and acquired from Lacy Masonry's defense counsel. Document No. 26 ex. 5 at EMC 107 ¶ 3. It is well established that facts developed during litigation of the underlying suit do not affect an insurer's duty to defend. *See* Trinity Univ. Ins. Co. v. Cowan, 945 S.W.2d 819, 829 (Tex. 1997) ("The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit." (quoting Am. Alliance Ins. Co. v. Frito-Lay, Inc., 788 S.W.2d 152, 154 (Tex. App.--Dallas 1990, writ dism'd)); *see also* Boss Mgmt. Servs., Inc. v. Acceptance Ins. Co., Civil Action No. H-06-2397, 2007 WL 2752700, at *12 (S.D. Tex. Sept. 19, 2007) (Johnson, J.) (rejecting insurers' reliance on evidence produced in the underlying suit to support their

17

contention that the property damage manifested prior to inception
of the policies and was therefore barred by the fortuity doctrine).

Second, the timing and nature of the alleged property damage
sustained by McKenna overlaps at least in part with the merits of
McKenna's claims.  McKenna's negligence claim against Lacy Masonry,
for example, alleges that Lacy Masonry and other defendants

> breached the duties they owed to McKenna by failing to
> act with reasonable care and within professional
> standards when they failed to construct and/or design a
> building that would prevent: (1) water infiltration and
> and/or through the interior and exterior building
> envelope; (2) water infiltration at and/or through the
> windows; (3) water infiltration at and/or through the
> roof; (4) water infiltration caused by improperly
> installed masonry . . . .

Document No. 27 ex. E-B at EMC 66 ¶ 24.  The documentary evidence
submitted by EMC reflects that from August, 2002 through August,
2003--well before the May 16, 2004 effective date of the EMC
Policy--McKenna expressed concerns about Lacy Masonry's placement
of weep holes in the structure and requested assurances from Lacy
Masonry that it would correct any problems that might arise,
Document No. 26 ex. 6 at EMC 111-12; an inspector hired by McKenna
to test air quality in the building detected mold and recommended
remediation for particular rooms; id. at EMC 113-14; and, during
the months that followed, Lacy Masonry replaced portions of the
exterior brick, repaired wall flashing, caulked gaps in expansion

joints, tested for and fixed numerous leaks, and replaced interior drywall in various parts of the building, id. at EMC 116-38.

To consider these documents for the purpose of establishing that Lacy Masonry was aware that McKenna's building had sustained or was sustaining damage due to leaks from gaps in the brickwork and other exterior structures directly implicates the merits of McKenna's claim that Lacy Masonry, as the entity that allegedly performed "all masonry work" on the building project, negligently constructed a building that allowed "water infiltration" to occur from the "exterior building envelope" and/or as a result of "improperly installed masonry." Document No. 27 ex. E-B at EMC 66 ¶ 24. Stated differently, whether Lacy Masonry was aware of damage to McKenna's building overlaps with a determination of whether such damage actually occurred and whether it stemmed at least in part from work performed by Lacy Masonry. The extrinsic evidence offered by EMC therefore does not pertain solely to the question of coverage, but also implicates Lacy Masonry's potential liability in the underlying suit. This type of "mixed" evidence is not admissible, even under the presumed limited exception to the strict eight-corners rule. See, e.g., Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp., 1 F.3d 365, 370-71 (5th Cir. 1993) (disallowing consideration of evidence pertaining to when the insured began shipping the chemical upon which the underlying strict liability claim was based, although that date fell within

the range of years alleged in the underlying petition, because that evidence concerned both the merits and coverage); *see also* Boss Mgmt. Servs. Inc., 2007 WL 2752700, at *12 (holding the extrinsic evidence offered by the CGL insurers to pinpoint the date that the property damage in the underlying suits manifested impermissibly overlapped with the merits of the claims, because "[t]he nature and timing of the alleged damages are relevant, at the very least, to the state court plaintiffs' negligence claims and the apportionment of liability"); GuideOne Elite Ins. Co., 197 S.W.3d at 309 (analyzing Gulf Chem. & Metallurgical Corp., and agreeing that "the use of overlapping evidence" is not permissible).

The date(s) when McKenna's property damage occurred is also relevant to the timeliness of McKenna's claims against Lacy Masonry. Although the Petition does not allege when the property damage occurred, McKenna asserts the discovery rule as one of several grounds for tolling the limitations period. *See* Document No. 27 ex. E-B ¶ 39. "[W]hen the discovery rule applies, accrual [of a cause of action] is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury and that it was likely caused by the wrongful acts of another." Childs v. Haussecker, 974 S.W.2d 31, 40 (Tex. 1998) (internal quotation marks omitted). McKenna's invocation of the discovery rule in answer to any limitations defense to its negligence claim would require proof that McKenna either discovered

or reasonably should have discovered property damage traceable to the negligent actions of Lacy Masonry or its co-defendants more than two years before suit was filed. *See* TEX. CIV. PRAC. & REM. CODE § 16.003 (prescribing a two-year limitations period for negligence claims). Admitting EMC's evidence for the purpose of establishing that by mid-2003, more than two years before suit was filed, Lacy Masonry knew through its *work on McKenna's building* and from *communications sent by McKenna* that the building had sustained property damage would impermissibly overlap with the determination of whether and when McKenna knew or should have known that such damage had occurred.

Based on the inadmissibility of EMC's proffered extrinsic evidence, the absence of facts on the face of the Petition suggesting that Lacy Masonry was aware of any property damage to McKenna's building before the effective date of the EMC Policy, and resolving all doubts in favor of the insured, the Court concludes that the allegations in the Petition potentially support a covered claim. Accordingly, Plaintiffs are entitled to declaratory judgment that EMC has a duty to defend Lacy Masonry in the underlying suit. Plaintiffs' further request for a discretionary award of attorney's fees under the Texas Declaratory Judgment Act is denied. *See* Camacho v. Tex. Workforce Comm'n, 445 F.3d 407, 412-13 (5th Cir. 2006) (holding the Texas DJA is "procedural for Erie purposes and does not apply in federal court).

B.   Effect of an "Other Insurance" or "Pro Rata" clause on a
     co-insurer's claim for costs of defense

     1.   Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.

     EMC contends that, even if it has a duty to defend, the Texas
Supreme Court's recent decision in Mid-Continent Ins. Co. v.
Liberty Mut. Ins. Co., 236 S.W.3d 765 (Tex. 2007), forecloses
Plaintiffs' ability to recover from EMC its share of costs already
incurred in defending Lacy Masonry in the underlying suit.   Mid-
Continent, responding to certified questions from the Fifth
Circuit, held that when co-primary insurance policies contain
"other insurance" or "pro rata" clauses, a co-insurer that pays
more than its proportionate share of a settlement has no right to
reimbursement from another co-insurer through contribution, and no
recovery through equitable or contractual subrogation if the
insured was fully indemnified.   236 S.W.3d at 768, 777.   Mid-
Continent involved co-insurers Liberty Mutual and Mid-Continent,
whose CGL policies each provided $1 million coverage and contained
"other insurance" clauses identical to that in the EMC Policy.   Id.
at 669.   Both insurers acknowledged their obligations to defend and
indemnify their insured but disagreed regarding the settlement
value of the underlying case; Liberty Mutual agreed to settle for
$1.5 million, but Mid-Continent valued the case at only $300,000.
Id. at 669-70.   Mid-Continent contributed only $150,000 toward

22

the settlement, and Liberty Mutual then paid the remaining
$1.35 million under a reservation of rights and sued Mid-Continent
to recover the remainder of its pro rata share of the settlement
amount. Id. at 770.

In rejecting Liberty Mutual's contribution claim, the Texas
Supreme Court drew on its long-standing precedent in Traders & Gen.
Ins. Co. v. Hicks Rubber Co., 169 S.W.2d 142, 148 (Tex. 1943), a
decision that construed a "pro-rata" or "other insurance" clause to
preclude a contribution claim asserted by one co-insurer against
another to recoup costs of defense:

> We recognized long ago in *Hicks Rubber* 'the general
> rule that, if two or more insurers bind themselves to pay
> the entire loss insured against, and one insurer pays the
> whole loss, the one so paying has a right of action
> against his co-insurer, or co-insurers, for a ratable
> proportion of the amount paid by him, because he has paid
> a debt which is equally and concurrently due by the other
> insurers. *Hicks Rubber*, 169 S.W.2d at 148. . . .

> We also recognized in *Hicks Rubber*, however, that
> this direct claim for contribution between co-insurers
> disappears when the insurance policies contain 'other
> insurance' or 'pro rata' clauses. 169 S.W.2d at 148.
> . . . The effect of the pro rata clause precludes a
> direct claim for contribution among insurers because the
> clause makes the contracts several and independent of
> each other. *Id.* With independent contractual obliga-
> tions, the co-insurers do not meet the common obligation
> requirement of a contribution claim--each co-insurer
> contractually agreed with the insured to pay only its pro
> rata share of a covered loss; the co-insurers did not
> contractually agree to pay each other's pro rata share.

Id. at 772.  The court also explained that a co-insurer that pays more than its pro-rata share under the "other insurance" clause "does so voluntarily; that is, without a legal obligation to do so."  Id.  For this additional reason, the overpaying insurer has no right to recover the excess from a co-insurer through contribution.  Id.

Addressing Liberty Mutual's equitable and contractual subrogation claims, the court reasoned that a subrogee such as Liberty Mutual steps into the shoes of its insured and can assert only those rights the insured could have asserted against Mid-Continent.  Id. at 775.  An insured's right to indemnity is limited to the actual amount of loss.  Id.  A pro rata clause "implements that principle by eliminating the potential for double recovery by the insured."  Id.  Therefore, when an insured has been fully indemnified, "'the liability of the remaining insurers *to the insured* ceases, even if they have done nothing to indemnify or defend the insured.'"  Id. at 775 (quoting Fireman's Fund Ins. Co. v. Md. Cas. Co., 77 Ca. Rptr. 2d 296, 305 (1998)) (emphasis in original).  The court concluded that "[h]aving fully recovered its loss, an insured has no contractual rights that a co-insurer may assert against another co-insurer in subrogation."  Id. at 776.

In light of this decision, the Fifth Circuit reversed the judgment of the district court and remanded with instructions to enter a take-nothing judgment against Liberty Mutual.  *See* Liberty

24

<u>Mut. Ins. Co. v. Mid-Continent Ins. Co.</u>, 508 F.3d 261, 262-63 (5th Cir. 2007) (per curiam).

      2.   Application of <u>Mid-Continent</u>

      a.   Contribution

The Texas Supreme Court's decision in <u>Hicks Rubber</u>, as analyzed and reaffirmed in <u>Mid-Continent</u>, applies squarely to Plaintiffs' claim for contribution. A party seeking contribution must demonstrate that "[1] the several insurers share a common obligation or burden[;] and [2] that the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden." <u>Mid-Continent</u>, 236 S.W.3d at 772 (citing <u>Employers Cas. Co. v. Trans. Ins. Co.</u>, 444 S.W.2d 606, 609 (Tex. 1969)). EMC's and Plaintiffs' respective policies contain "other insurance" or "pro rata" clauses identical to the clauses addressed in <u>Mid-Continent</u>, limiting each insurer's obligations to an equal share of a covered loss, or a proportion of such loss based on a ratio of the limit of insurance under the policy to the total limits of coverage under all policies. *Compare* Document No. 27 ex. H, *with* <u>Mid-Continent</u>, 236 S.W.3d at 669. As held in <u>Mid-Continent</u>, these clauses render the contractual obligations of Plaintiffs and EMC "several and independent of each other, not joint." <u>Id.</u> at 772; *see also* <u>Hicks Rubber</u>, 169 S.W.2d at 148 (construing the insurance contracts as

25

"several, and independent of each other" and denying recovery between co-insurers for defense costs).  Because Plaintiffs' and EMC's contractual obligations to Lacy Masonry are independent of each other, Plaintiffs cannot establish the common obligation element of their contribution claim.

Plaintiffs attempt to distinguish <u>Mid-Continent</u> on the grounds that their duty to provide Lacy Masonry a "*complete defense*," not a pro-rata one, means that they did not "voluntarily" pay any amounts over and above their pro-rata share of those expenses. Document No. 32 at 6 (emphasis in original).  According to Plaintiffs, the "'other insurance' language typically found in insurance policies--because it specifically references only 'loss,' *i.e.*, indemnity--does not apply to the duty to defend."  Document No. 32 at 6 (emphasis omitted).

<u>Mid-Continent</u> recognized that an insurer that voluntarily pays more than its fair share of an obligation cannot recover in contribution, which requires proof of a *compulsory* payment.  236 S.W.3d at 772.  But the portion of <u>Mid-Continent</u> critical to this case addresses the impact of "pro rata" or "other insurance" clauses on the *commonality of obligation* between co-insurers--a separate and distinct element of a contribution claim.  <u>Mid-Continent</u> categorically bars direct contribution claims between co-insurers whose policies contain "other insurance" clauses by construing their contractual obligations as "several and

26

independent of each other." 236 S.W.3d at 772. The independence of these contractual obligations affects not only the duty to indemnify, as discussed in Mid-Continent, but necessarily applies with equal force to the duty to defend. This is also evident from Mid-Continent's wholesale adherence to the rationale of Hicks Rubber, which articulated this principle and rejected a contribution claim that included costs of defense. See Hicks Rubber, 169 S.W.2d at 146, 148. The Court agrees that Plaintiffs and EMC must fully defend Lacy Masonry, and that the wording of the "other insurance" clause facially does not limit each insurer's defense obligations. But the inclusion of "other insurance" clauses in the parties' policies defeats Plaintiffs' contribution claim by transforming their otherwise shared contractual obligations--including to defend--into independent duties that can only be enforced, if at all, by Lacy Masonry. Accordingly, EMC is entitled to summary judgment on Plaintiffs' claim for contribution.

b.   Subrogation

Plaintiffs also assert a subrogation claim for breach of contract to recover from EMC its pro-rata share of the costs of defense. Document No. 1 ex. A ¶¶ 26-28. However, Mid-Continent also forecloses contractual and equitable subrogation claims between co-insurers when the insured has been fully compensated. Mid-Continent, 236 S.W.3d at 775-76. Mid-Continent's rejection of

subrogation in this context derives from the principle that an insured cannot obtain more than a single recovery for any loss, and that an insurer asserting rights in subrogation stands in the shoes of its insured. *See* Mid-Continent, 236 S.W.3d at 775-76. Allowing an insured to recover a portion of those costs that have been paid in full by another insurer would result in an impermissible double recovery. Here, if EMC did breach its duty to defend Lacy Masonry in the underlying suit by refusing to contribute any portion of the costs of defense, Lacy Masonry has nonetheless incurred no loss because Plaintiffs have borne *all costs* associated with its defense. *See* Document No. 27 at 6-7. Under Mid-Continent's rationale, the absence of any loss to Lacy Masonry precludes Plaintiffs' subrogation claim.

Plaintiffs argue that "[b]ecause EMC has improperly denied Lacy Masonry a defense in the [u]nderlying [l]awsuit, Lacy Masonry could have brought a declaratory action itself to enforce its rights as to the EMC policy." Document No. 32 at 4. Based on this reasoning, Plaintiffs contend that they may "stand in Lacy Masonry's shoes as a subrogee to enforce those rights." Id. Plaintiffs' request for a declaration regarding EMC's duty to defend that might otherwise have been brought by Lacy Masonry is not the issue, and indeed, the Court has already concluded that Plaintiffs are entitled to that relief. Instead, it is Plaintiffs' subrogation claim for breach of contract seeking *damages* equal to

28

EMC's share of the costs of defense that <u>Mid-Continent</u> prohibits.
Applying <u>Mid-Continent</u>, Plaintiffs stand in no better position than
Lacy Masonry, who, having been fully defended by Plaintiffs in the
underlying suit, has no basis to recover damages against EMC for
its failure to defend.

Although Plaintiffs assert that Lacy Masonry "continues to be
harmed by EMC's refusal to defend," they neither substantiate nor
explain the nature of the alleged harm, and none is reflected in
the record.  The potential public policy ramifications of <u>Mid-
Continent</u> do not provide grounds to disregard its binding
authority.  In sum, Plaintiffs cannot recover through subrogation
any portion of the defense costs that should have been paid by EMC
inasmuch as Lacy Masonry has sustained no loss resulting from EMC's
failure to defend.  EMC is therefore entitled to summary judgment
on Plaintiffs' subrogation claim for breach of contract.[5]

---

[5] EMC, relying solely on its contention that it has no duty to
defend, asserts that it is also entitled to a declaration that it
has no duty to indemnify Lacy Masonry, although, notably, EMC did
not request any such relief by way of counterclaim or in its
answer.  Document No. 4; Document No. 33 at 9-10.  "Texas law only
considers the duty-to-indemnify question justiciable after the
underlying suit is concluded, unless 'the same reasons that negate
the duty to defend likewise negate any possibility the insurer will
ever have a duty to indemnify.'"  <u>Northfield</u>, 363 F.3d at 536
(quoting <u>Farmers Tex. County Mut. Ins. Co. v. Griffin</u>, 955 S.W.2d
81, 84 (Tex. 1997))(emphasis omitted)).  Assuming, however, that
EMC properly raised its request for declaratory relief, the Court's
conclusion that EMC owes Lacy Masonry a duty to defend renders the
issues regarding EMC's duty to indemnify non-justiciable until
the underlying suit is resolved.  <i>See, e.g.</i>, <u>id.</u> (affirming the
district court's refusal to resolve the issue of indemnity when it

IV.   <u>Order</u>

Accordingly, it is

ORDERED that Plaintiffs Trinity Universal Insurance Company's, Utica National Insurance's and National American Insurance Company's Motion for Summary Judgment (Document No. 23) and amendment thereto (Document No. 27) are GRANTED IN PART, and it is therefore DECLARED that Defendant Employers Mutual Casualty Company has a duty to defend Lacy Masonry, Inc. under Policy No. 3RO-52-53-05, effective from May 16, 2004 to May 16, 2005, in <u>McKenna Memorial Hospital v. HBE Corp., Hospital Building & Equipment Co., Hospital Designers, Inc., Facility Works, Inc., Lacy Masonry, Inc., Ollie Tope & Sons, Armor Sealants, Inc., Todd-Ford Management Co. Todd-Ford, Inc., and PHI Service Agency, Inc.</u>, Cause No. C2005-0993C, in the 274th Judicial District Court, Comal County, Texas.  In all other respects, Plaintiffs' motions are DENIED.

It is further ORDERED that Defendant Employers Mutual Casualty Company's Motion for Summary Judgment (Document No. 26) is GRANTED IN PART, and Plaintiffs' claims for contribution and breach of

---

had correctly found a duty to defend).  EMC's requested declaration regarding its duty to indemnify is therefore denied.

contract are DISMISSED on the merits.  Defendant's motion is otherwise DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 15th day of May, 2008.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE